1

2

3

4

5

6                               UNITED STATES DISTRICT COURT

7                                     DISTRICT OF NEVADA

8                                              * * *
                                                )
9    JOHN MASON,                                )
                                                )
10                  Plaintiff,                   )           03:03-CV-00188-LRH-VPC
                                                )
11   v.                                         )
                                                )           ORDER
12   ARTWORKS PICTURES, LLC, a Delaware         )
     limited liability company; EDGARD          )
13   MEINHARDT-ITURBE, an individual; and       )
     DOES 1 through 20, inclusive,              )
14                                              )
                    Defendants.                 )
15   _____        )

16          Before the court is Plaintiff John Mason's ("Mason") motion for partial summary judgment

17   on the issue of damages for breach of contract (#38).  Defendants Artworks Pictures, LLC,

18   ("Artworks") and Edgard Meinhardt-Iturbe ("Iturbe") have not responded to  Mason's motion.

19   **I.      Facts**

20          The following facts are extracted from the parties' affidavits and exhibits as well as this

21   court's order granting in part and denying in part Mason's earlier motion for summary judgment

22   (#27):

23          Artworks and its president, Iturbe, entered into two contracts providing that Mason would

24   perform legal work relating to the production of a motion picture, *Bolivar the Liberator*

25   (*"Bolivar"*).  The first contract ("Consulting Agreement"), signed in April, 2000, was for Mason's

26   consultation and advice in connection with "legal affairs" relating to the production of *Bolivar*.

1   (Mot. for Part. Summ. J. (#38), Ex. 3 at ¶ 2.)  The second contract ("Retainer Agreement"), signed

2   on January 1, 2001, was a thirty-six month retainer agreement for legal representation on issues

3   other than the production of *Bolivar*.  Iturbe personally guaranteed the agreements, the cash

4   compensation for which totaled $1,550,000.

5         The total "cash compensation" for the Consulting Agreement amounted to $1,100,000.  It

6   was to be dispersed in the following way: (1) "$150,000 shall be due upon the execution of this

7   Agreement"; (2) "$100,000 shall be paid on completion of Development of Bolivar, but in no event

8   later than June 1, 2001"; (3) "$100,000 shall be paid on the first day of each of the six months

9   immediately following the date on which 'Pre-Production' of Bolivar commences, for a total of

10  $600,000 pursuant to this clause . . . the first payment under this clause is due no later than August

11  1, 2001"; (4) "$200,000 shall be paid in equal weekly installments during the course of Principal

12  Photography"; and (5) "$50,000 shall be paid on the date on which the answer print for Bolivar

13  (which is the final edited version of the film that immediately precedes the cutting of the negative)

14  is delivered to the Company."  (Mot. for Part. Summ. J. (#38), Ex. 1 at ¶ 2.)

15        The Retainer Agreement provided for a fee of

16        $12,500.00 per month . . . which shall be paid in advance on the first business day of
          each calendar month, for 36 months.  The first such installment was received by
17        Consultant [Mason] on or about January 25, 2001.  The total amount of Fees due under
          this Agreement is $450,000.
18

19  (Mot. for Part. Summ. J. (#38), Ex. 2 at ¶ 2.)  The Retainer Agreement set the termination of the

20  Agreement on December 31, 2003.  (*Id*. at ¶ 3(a).)  In the event that the Company terminated the

21  Agreement without "Cause," the Company agreed to "continue to pay to the Consultant the

22  Consultant's entire unpaid Fees in accordance [with the above fee stipulation] throughout the

23  remainder of the term."  (*Id*. at ¶ 3(b)(I).)  The Agreement defined "Cause" to be the consultant's

24  "theft," "fraud," or the "Consultant's substantial and repeated failure to perform" the duties

25  outlined in the Agreement in accordance with the reasonable requests of the company.  (*Id*. at ¶

26                                              2

1   (3)(c)(I).)

2        Mason began working pursuant to the Consulting Agreement in April, 2000.  (Mot. for Part.

3   Summ. J. (#38), Ex. 3 at ¶ 8.)  By September, 2000, *Bolivar* was in its development stage.  (*Id*. at ¶

4   12.)  After payments began to lag on both Agreements, Mason demanded (on July 13, 2001, and

5   again in September, 2001) and received assurances from Iturbe that both Agreements would be "put

6   current."  (*Id*. at ¶ 25.)  However, Mason did not receive the promised payments, and on October

7   18, 2001, Ms. Jeanie Mason, Artworks's Vice President, told Mason that "Artworks Pictures, LLC,

8   is in material breach of everyone's agreements . . . ."  (*Id*. at ¶ 31.)  Finally, on June 10, 2002,

9   Mason demanded payment by June 28, 2002, and he advised Iturbe that legal action would

10  commence if Iturbe failed to meet this deadline.  (Mot. for Summ. J. (#31), Ex. 31 at 1.)

11       In April, 2003, Mason filed a Complaint to recover $1,050,019, the amount he alleges due

12  under the contracts.  Iturbe, appearing pro se, filed an Answer, Affirmative Defenses, and

13  Counterclaims on behalf of both himself and Artworks.  In his Answer, Iturbe alleged that Mason

14  did not fulfill his obligations under the contract and that he committed malpractice.

15       On February 6, 2004, the court noted that Artworks, as a corporate defendant, must be

16  represented by counsel in this action and gave Artworks ninety (90) days in which to file a

17  submission of counsel.  Artworks failed to do so, and, on July 2, 2004, the court entered a default

18  judgment against Artworks.  (#20.)

19       On January 31, 2005, the court entered summary judgment in favor of Mason on all

20  counterclaims brought by Iturbe.  (#27.)  On April 12, 2007, the court entered partial summary

21  judgment against Iturbe on Mason's claims, finding that Iturbe breached his contract with Mason.

22  But the court denied partial summary judgment on the issue of damages because a deficiency in

23  Mason's evidence rendered damages impossible to calculate.  The court also found a genuine issue

24  of material fact in Mason's breach of the covenant of good faith and fair dealing claim.

25       Mason filed the current motion for partial summary judgment as to damages on October 29,

26

3

1    2007.  Mason claims total damages of $1,050,019 plus costs and interest, having received $350,000

2    under the Consulting Agreement and $149,980 under the Retainer Agreement.  (Order of January

3    28, 2004 (#27), at 2.)  Iturbe has not responded, and mail addressed to both Iturbe and Artworks has

4    been returned to the court as undeliverable.  (#41, 42, 45, 46.)

5    **II.    Legal Standard**

6            Summary judgment is appropriate only when "the pleadings, depositions, answers to

7    interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

8    genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

9    law." Fed. R. Civ. P. 56(c).  In assessing a motion for summary judgment, the evidence, together

10   with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable

11   to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

12   587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d

13   1148, 1154 (9th Cir. 2001).

14           The moving party bears the burden of informing the court of the basis for its motion, along

15   with evidence showing the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*,

16   477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  On those issues for which it bears the

17   burden of proof, the moving party must make a showing that is "sufficient for the court to hold that

18   no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*,

19   799 F.2d 254, 259 (6th Cir. 1986).  *See also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141

20   (C.D.Cal. 2001).  For those issues where the moving party will not have the burden of proof at trial,

21   the movant must point out to the court "that there is an absence of evidence to support the

22   nonmoving party's case." *Catrett,* 477 U.S. at 325.

23           In order to successfully rebut a motion for summary judgment, the non-moving party must

24   point to facts supported by the record which demonstrate a genuine issue of material fact.  *Reese v.*

25   *Jefferson School Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000).  A "material fact" is a fact "that

26                                                          4

1 might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*,

2 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  Where reasonable minds could differ

3 on the material facts at issue, summary judgment is not appropriate.  *See v. Durang*, 711 F.2d 141,

4 143 (9th Cir. 1983).  A dispute regarding a material fact is considered genuine "if the evidence is

5 such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477

6 U.S. at 248, 106 S.Ct. 2505.   The mere existence of a scintilla of evidence in support of the

7 plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on

8 which the jury could reasonably find for the plaintiff.  *See id.* at 252, 106 S.Ct. 2505.

9 **III.    Discussion**

10         **A. Retainer Agreement**

11         The Retainer Agreement contains a liquidated damages clause that provides for full

12 payment for the remainder of the contracted term in the event that Artworks terminates the

13 Agreement "without Cause."  The Agreement further defined "Cause" as theft, fraud, or failure to

14 perform duties reasonably requested.  Iturbe has presented no evidence in opposition to the motion

15 for partial summary judgment to suggest that the Agreement was terminated for cause.  Therefore,

16 since a contract's terms must "be given their plain meaning and the contract must be enforced as

17 written" when a contract is clear, unambiguous, and complete, *Ringle v. Bruton*, 86 P.3d 1032,

18 1039 (Nev. 2004), the liquidated damages provision of the contract governs.

19         Liquidated damages, a sum which a party to a contract agrees to pay if she fails to perform,

20 are prima facie valid unless the party challenging the provision shows that the damages amount to a

21 penalty.  *Mason v. Fakhimi*, 865 P.2d 333, 335 (Nev. 1993).  A penalty is a sum inserted as a

22 means of punishing default rather than as a good faith effort to estimate actual damages in the event

23 of breach.  *Id.*  If actual damages are difficult to estimate, a party challenging the provision must

24 show that the provision is not "reasonable in [its] character." *In re Owl Drug Co.*, 12 F. Supp. 431,

25 435 (D. Nev. 1935).

26

1    The liquidated damages provision is enforceable.  Iturbe has not carried his burden of

2    showing that the liquidated damages (here, the amount due for the remainder of the term in the

3    Agreement) amount to a penalty.  *See Mason*, 865 P.2d at 335.  Since Iturbe has not provided

4    evidence that the liquidated damages provision is unreasonable, the court assumes the provision to

5    be "prima facie valid."  *Id*.  Therefore, Mason may recover the balance of the Retainer Agreement

6    for the remainder of the term specified in the contract: $450,000 - $149,980 = $300,020.

7        **B.  Consulting Agreement**

8        The cash compensation structure of the Consulting Agreement provides five conditional

9    provisions.  Under Nevada law, the plain meaning of the contractual language governs unless there

10   is ambiguity.  *Williams v. Waldman*, 836 P.2d 614, 619 (Nev. 1999).  A contract is ambiguous if it

11   is subject to more than one reasonable interpretation.  *Anvui, LLC v. G.L. Dragon, LLC*, 163 P.3d

12   405, 407 (Nev. 2007).  Here, provisions (1)-(5) provide for the payment of certain sums "upon,"

13   "on completion of," during," and "on the date [of]" certain events.  There is ambiguity as to

14   whether the occurrence of each event is a condition for payment under each provision.  Therefore,

15   interpretation beyond the plain meaning of these terms is appropriate.  *Id*.  An interpretation which

16   results in a fair and reasonable contract is preferable to one that results in a harsh and unreasonable

17   contract.  *Dickenson v. State, Dept. of Wildlife*, 877 P.2d 1059, 1061 (Nev. 1994)

18       The intent of the parties indicates that the commencement of each event is a condition

19   precedent to payment under each provision.  While "[i]mplied conditions, in contracts, are not

20   lightly to be presumed," *Oregon Plywood Sales Corp. v. Sutherlin Plywood Corp.*, 246 F.2d 466,

21   468 (9th Cir. 1957), conditions may be implied in fact from the express language used by the

22   parties or from the surrounding circumstances, 13 Richard A. Lord, *Williston on Contracts* § 38:11

23   (4th ed. 2008).  A condition precedent to an obligation calls for the performance of some act upon

24   which the corresponding obligation depends.  *NGA #2 Ltd. Liability Co. v. Rains*, 946 P.2d 163,

25   168 (Nev. 1997).

26

6

1    The payment schedule represented in provisions (1)-(5) rewards the Consultant for

2   shepherding *Bolivar* to certain benchmarks.  For example, one such benchmark is the

3   commencement of Principal Photography.  Paragraph 3, providing for stock compensation, contains

4   similar language to the cash compensation paragraph, awarding twenty-five percent tranches of the

5   total stock remuneration upon the achievement of certain benchmarks.  (Mot. for Part. Summ. J.

6   (#38), Ex. 1 at ¶ 3.) Elsewhere in the contract, these benchmarks are referred to as "events which

7   are *conditions* to . . . payment."  (*Id*. at ¶ 4(b) (emphasis added).)  In addition, where the parties

8   intended that Mason be paid regardless of the completion of *Bolivar*, the contract explicitly notes

9   this.  (*Id*. at ¶¶ 3(b), 4(b).)  The general structure of the provisions, dividing total cash

10  compensation into discrete payments corresponding to events like Principal Photography, further

11  reflects the parties' intent to treat the occurrence of the events as conditions to payment.  Finally, if

12  the events and the promises to pay were treated as independent obligations, rather than as

13  conditions, Mason could recover if the project fell through even if the project's failure was

14  Mason's fault.  It is unlikely that these sophisticated parties intended such a windfall.  Since

15  Nevada law favors "interpretation which results in a fair and reasonable contract," *Dickenson*, 877

16  P.2d at 1061, the events should be treated as conditions precedent to the promises to pay.

17    Accordingly, Mason may recover for provisions (1) and (2) of the Consulting Agreement.

18  Since these provisions condition payment on events that actually occurred, damages due under

19  these provisions should be disbursed according to the standard compensatory damages measure.

20  Under Nevada law, "[i]n the determination of the amount of damages recoverable by reason of

21  breach of contract, the law attempts to place the nondefaulting party in the position it would have

22  occupied had the contract been performed."  *Stearns' Props. v. Trans-World Holding Corp.*, 492 F.

23  Supp. 238, 243 (D. Nev. 1980).  The conditions embodied in provisions (1) and (2) are the signing

24  of the Agreement itself and the beginning of "Development," which  Mason places in September,

25  2000–both of which occurred according to the undisputed evidence. (Mot. for Part. Summ. J.

26                                                       7

(#38), Ex. 3 at ¶ 1, 12.)

Similarly, Mason can recover under provision (3).  Provision (3), committing Artworks to six cash payments of $100,000 over six months, is conditioned on the commencement of "Pre-Production," but "the first payment under this clause is due no later than August 1, 2001."  There is no evidence that "Pre-Production," defined as when either the "line producer" or the director of *Bolivar* commences services, began.  (Mot. for Part. Summ. J. (#38), Ex. 1 at ¶ 2(iii).)  However, scheduled payments should have commenced on August 1, 2001, and continued until January 1, 2002.

The condition precedent to payments under provision (3), the date August 1, 2001, occurred after Iturbe had already missed payments.  (Mot. for Part. Summ. J. (#38), Ex. 3 at ¶¶ 23, 27.)  Therefore, it is possible a breach may have already occurred by August 1, 2001, or shortly thereafter.  Following the general rule, this breach would have triggered Mason's duty to mitigate damages.  *Davis v. First Interstate Bank of Idaho, N.A.*, 765 P.2d 680, 681 (Idaho 1988).  Though the condition precedent to payment under provision (3) occurred as a matter of law, Mason's duty to mitigate may reduce his recovery.

While there is no legal "duty" to mitigate damages in a breach of contract action, *Restatement (Second) of Contracts* § 350 cmt. b (1981), a plaintiff may not recover for losses which it was possible to mitigate.  *See Spurgeon v. Drumheller*, 220 Cal. Rptr. 195, 198 (Cal. Ct. App. 1985) (discussing mitigation in the context of real estate contracts).  Under Nevada law, "[w]hile it is often said that the nondefaulting party has a duty to mitigate damages, the burden is upon the defaulting party to show that there was a failure to mitigate."  *Stearns' Props.*, 492 F. Supp. at 224.

Here, since Iturbe has not presented any evidence to show Mason failed to mitigate damages, Iturbe has not carried his burden.  Furthermore, it is improper for this court to limit damages by raising the unpled defense of mitigation *sua sponte*.  *See A-1 Ambulance Serv., Inc. v. County of Monterey*, 90 F.3d 333, 339 (9th Cir. 1996) ("Our system requires a defendant either to

8

raise an obvious defense or to forgo its manifest benefits.").  Therefore, Mason may recover the full amount under provision (3).

Taking provisions (4) and (5) to be conditioned on Principal Photography and the delivery of the answer print, respectively, Artworks did not breach these provisions.  Therefore, Mason may not recover for them.  "A non-occurrence of a condition in a contract is not a breach by a party, unless he is under a duty that the condition occur."  *Warner Bros. Intern. Television Dist. v. Golden Channels & Co.*, 522 F.3d 1060, 1070 (9th Cir. 2008).  Here, however, there is no indication that Artworks had a duty to commence Principal Photography or to facilitate delivery of the answer print.  Indeed, the contract and the parties' course of dealing pursuant to the contract demonstrate that these events depended upon the efforts of many people.  For example, Principal Photography could not begin until talent had been signed, and Mason was in part responsible for this task.  (Mot. for Part. Summ. J. (#38), Ex. 1 at ¶ 3(ii).)  A "condition creates no right or duty in itself, but is merely a limiting factor," and if it does not occur, the promisee acquires no right to enforce the promise.  *United States v. Schaeffer*, 319 F.2d 907, 911 (9th Cir. 1963).  Consequently, Mason is not entitled to damages under these provisions.

**C. Interest**

Interest on money due from contracts is recoverable as a matter of right.  *Schoepe v. Pacific Silver Corp.*, 893 P.2d 388, 390 (Nev. 1995).  "[T]hree items must be determined to enable the trial court to make an appropriate award of interest: (1) the rate of interest; (2) the time when it commences to run; and (3) the amount of money to which the rate of interest must be applied."  *Id.* at 389.  Unless the contract specifies otherwise, interest on the amount due is "equal to the prime rate at the largest bank in Nevada, as ascertained by the Commissioner of Financial Institutions, on January 1 or July 1, as the case may be, immediately preceding the date of the transaction, plus 2 percent, upon all money from the time it becomes due . . . ."  Nev. Rev. Stat. § 99.040(1) (2005). "The interest rate applied is the rate in effect on the date when the parties signed the contract,"

9

though this interest rate is applied only from the date that obligations became due. *Kerala Props., Inc. v. Familian*, 137 P.3d 1146, 1149 (Nev. 2006).   Pre-judgment interest is to be calculated at a fixed rate, while post-judgment interest is to be calculable at a rate adjustable biannually. *Id*.

The Commissioner of Financial Institutions fixes the prime rate at 9.50% on January 1, 2001,[1] the date Mason and Artworks/Iturbe signed the Retainer Agreement.  The relevant date for the computation of prejudgment interest in a contracts action is the date of signing. *Kerala Props., Inc.*, 137 P.3d at 1149.  Therefore, the fixed, prejudgment rate of interest owed on the amount due under the Retainer Agreement is 11.50%. *See id*.  The obligation to pay became due in June, 2002, when Mason demanded payment.  Therefore, The total amount due under the Retainer Agreement is $300,020 + (($300,020 • .1150) • 6 yrs.) = $507,034 (rounded to the nearest dollar).

The Commissioner of Financial Institutions fixes the prime rate at 8.25% on January 1, 2000, the relevant statutory reference point for the Consulting Agreement, signed in April, 2000. *See id*.  Therefore, the fixed, prejudgment rate of interest owed on the amount due under the Consulting Agreement is 10.25%. *See id*.  The outstanding $500,000 ($850,000 total recovery minus $350,000 already paid) became due in $100,000 increments over five months from September 1, 2001, to January 1, 2002.  The September 2001 interest is (($100,000 • .1025) • 6 yrs., 9 months) = $69,187.50.  Following similar calculations, the interest for the remaining increments from October to January is $68,326.50, $67,479.13, $66,625, and $65,770.83.  The total amount due under the Consulting Agreement is ($500,000 + ($69,187.50 + $68,326.50 + $67,479.13 + $66,625 + 65,770.83)) = $837,389 (rounded to the nearest dollar).

**IV.    Conclusion**

The amount of recovery, excluding costs, is $507,035 + $837,389 = $1,344,424.  The court notes that an issue for trial, Mason's good faith and fair dealing claim, still remains.  Pursuant to Local Rules 16-4 and 26-1(e)(5), the parties must lodge their pretrial order within thirty (30) days

---

[1]http://fid.state.nv.us/Prime/PrimeInterestRate.pdf

from entry of this Order.  However, as damages for breach have been awarded, the court will

entertain Mason's motion to voluntarily dismiss the remaining claim should he so move.

      IT IS THEREFORE ORDERED that Mason's motion for partial summary judgment (#38)

is GRANTED.  Damages will be awarded in the amount of $1,348,353 plus costs.

      IT IS FURTHER ORDERED that the parties shall lodge their proposed joint pretrial order

within thirty (30) days from entry of this Order.  *See* Local Rules 16-4 and 26-1(e)(5).

      IT IS SO ORDERED.

      DATED this 12th day of June, 2008.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE

11